**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK R. CREAN and DAWN M. DINO, Personal Representative of the Estate of DAVID M. CREAN and as Trustee of HALMARK SYSTEMS, INC. PROFIT SHARING PLAN, Plaintiffs, v. MORGAN STANLEY SMITH BARNEY, LLC, Defendant. | No. 21-cv-11021-PBS |

<u>**MEMORANDUM AND ORDER ON MORGAN STANLEY SMITH BARNEY, LLC'S MOTION TO COMPEL ARBITRATION AND STAY**</u>

CABELL, U.S.M.J.

The plaintiffs, Mark R. Crean and Dawn M. Dino, as Personal Representative of the Estate of David M. Crean and as Trustee of Halmark Systems, Inc. Profit Sharing Plan, (collectively "the plaintiffs"), have brought suit against Morgan Stanley Smith Barney, LLC ("the defendant" or "Morgan Stanley"). The operative amended complaint presently asserts claims for breach of contract, conversion, fraud, breach of fiduciary duties, and violation of M.G.L. c. 93A, § 9. Pending before the court is the defendant's motion to compel the plaintiffs to submit the claims to

arbitration.   (D. 25).   The defendant also moves to stay these proceedings pending resolution of the arbitration.   (D. 25).

The plaintiffs argue in opposition that there is no showing that a written arbitration agreement exists, and that the defendant has effectively admitted as much where it failed to answer a request for admission regarding a written agreement and provide documents in response to a document request asking for the same. (D. 28).   They argue further that the defendant waived the right to seek arbitration by waiting until the close of discovery to file the motion to compel arbitration.   (D. 28, pp. 4-5).   The court agrees that the defendant has failed to persuasively prove the existence of a written arbitration agreement.   For this and other reasons stated below, the motion to compel (D. 25) is denied.

## I.   <u>STANDARD OF REVIEW</u>

The defendant moves to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.   In such circumstances, a summary judgment standard applies to evaluating the motion.   *Air-Con, Inc. v. Daikin Applied Latin America, LLC*, 21 F.4th 168, 174 (1st Cir. 2021) ("[D]istrict courts should apply the summary judgment standard to evaluate motions to compel arbitration under the FAA."); *Soto v. State Industrial Products, Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011) (rejecting argument that district court improperly considered documents outside scope of complaint because movant sought review under FAA as opposed to

Fed. R. Civ. P. 12(b)(6)).  An exception applies when the party moving to compel relies on "only uncontroverted allegations from the complaint," as did the party moving to compel in *Air-Con*.  Air-Con, 21 F.4th at 177 & n.10.  The defendant, however, relies on matters outside the unsworn amended complaint (D. 26-1, pp. 228-241), including a Morgan Stanley client agreement and an affidavit. (D. 26-1, pp. 2, 34-48).

In describing the summary judgment standard, the court in *Air-Con* initially declares that "[i]f the non-moving party puts forward materials that create a genuine issue of fact about a dispute's arbitrability, the district court 'shall proceed summarily' to trial to resolve that question." *Air-Con*, 21 F.4th at 175 (quoting 9 U.S.C. § 4 and citing *Neb. Mach. Co., Inc. v. Cargotec Sols., LLC*, 762 F.3d 737, 744 (8th Cir. 2014)).  The court goes on to state that "[t]he non-moving party 'cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial.'"  *Id.* at 175 n.8 (quoting *Soto*, 642 F.3d at 72 n.2). Notably, later in the decision the *Air-Con* court recognizes that "the non-moving party's burden 'to offer evidence supporting its own case' does *not* arise 'unless the moving party meets its initial burden' of production."  *Id.* at 177 (citing *Carmona v. Toledo*, 215 F.3d 124, 133 (1st Cir. 2000)) (emphasis added).

Accordingly, in finding that the summary judgment standard applies to a motion to compel arbitration, the *Air-Con* court did *not* reject *sub silentio* the initial summary judgment burden of production placed on the movant seeking arbitration.  Bolstering this conclusion is the fact that the movant seeking arbitration in *Soto* implicitly met its initial summary judgment burden of production by putting forth several documents which the non-moving party signed, including an acknowledgment of the company's dispute resolution program and a contract with an arbitration clause. *Soto*, 642 F.3d at 70.

In short, "if the party moving to compel arbitration meets its initial burden of production, the non-moving party must offer evidence supporting its own case" and "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitrate rests." *Casale v. Ecolab Inc.*, Docket No. 2:21-CV-00126-NT, 2022 WL 1910126, at *4 (D. Me. June 3, 2022), *appeal filed*, No. 22-1498 (1st Cir. June 27, 2022).  Here, in attempting to satisfy its initial burden of production, the defendant primarily relies on an affidavit (D. 26-1, p. 2) to show the existence of a written arbitration agreement binding on Halmark PSP.  (D. 26); s*ee generally Carmona*, 215 F.3d at 132 n.8 (movant may satisfy "initial burden of production" by "affirmatively produc[ing] evidence that negates an essential element of the non-moving party's claim").

## II.  <u>BACKGROUND</u>

In 1982, Edwin and David Crean incorporated Halmark Systems, Inc. in Massachusetts and served as the company's officers, directors, and shareholders.  (D. 1-1, p. 229, ¶¶ 4-5).  In 1984, they created the Halmark Systems, Inc. Profit Sharing Plan ("Halmark PSP").[1]  (D. 1-1, p. 230, ¶ 6) (D. 1-1, p. 26, ¶ C).  By affidavit, Arthur Murphy, Jr. ("Murphy"), a current "Vice President, Financial Advisor" at Morgan Stanley, states that the Halmark PSP "opened an investment account with a Morgan Stanley predecessor, Legg Mason, Inc. ("Legg Mason"), "titled 'Edwin Crean Trustee Halmark Systems RPM PS Profit Sharing Plan, Retirement Account No. XXX-XX410'" ("Halmark PSP Account") "[o]n or about February 16, 2005."[2]  (D. 26-1, p. 2, ¶ 2).

---

[1] David Crean died in July 2020.  (D. 1-1, p. 231, ¶ 19).  In December 2020, the Norfolk County Probate and Family Court Department appointed Dawn M. Dino "as Personal Representative of the Estate of David Michael Crean."  (D. 1-1, p. 231, ¶ 20).  Out of an abundance of caution, this court considers these "facts" from the unverified amended complaint and those set out in the above two sentences solely for context and background purposes.  Significantly, these "facts" do not address the core, material issues of validity of a written arbitration agreement and waiver.  *See Wilson v. Moreau*, 492 F.3d 50, 53 (1st Cir. 2007) (assuming "facts" arguendo in reviewing district court's summary judgment motion ruling because they "are not highly relevant, and the core issue—the authority attaching to Wilson's position—is decisive").  In June 2021, Dawn M. Dino accepted an appointment as trustee of Halmark PSP.  (D. 1-1, pp. 450, 452).

[2] The parties agree upon the existence of Halmark PSP (D. 1-1, p. 230, ¶ 6) (D. 26, pp. 1-2), which the record supports (D. 1-1, pp. 243-381).  However, they disagree on the date Halmark PSP opened the Halmark PSP Account with Legg Mason.  The plaintiffs submit Halmark PSP opened the account shortly after "January of 1984, not 2005."  (D. 28, p. 3).  The ambiguity is immaterial to the court's consideration of the present motion.

A.   <u>**Events Leading to the Purported Arbitration Clause**</u>[3]

On January 18, 2012, Morgan Stanley acquired the Halmark PSP Account.  (D. 26-1, p. 2, ¶ 3).  Murphy attests that "Halmark PSP would have been required to sign a client agreement containing a mandatory arbitration clause" when it opened the account with Legg Mason, Inc. ("Legg Mason") in February 2005.[4]  (D. 26-1, p. 2, ¶ 2, sent. 2).  At present, however, "Morgan Stanley is unable to locate a signed copy of the [Legg Mason client agreement] controlling the Halmark PSP Account."  (D. 26-1, p. 2, ¶ 4).  Murphy further avers that the Legg Mason client "account agreement would have contained an arbitration provision similar to those used by Morgan Stanley at account opening."[5]  (D. 26-1, p. 2, ¶ 4).  Attached to his affidavit is an unsigned Morgan Stanley account client agreement "used by Morgan Stanley at account opening" ("Morgan Stanley client agreement").  (D. 26-1, p. 2, ¶

---

[3] The defendant heavily relies on Murphy's brief affidavit to support a written arbitration clause.  The plaintiffs, in turn, argue that certain affidavit statements lack personal knowledge.  The plaintiffs' arguments are referenced in footnotes and addressed in the discussion section.  Successful challenges to such statements render the statements outside the factual record.  *See* Fed. R. Civ. P. 56(c)(4).

[4] The plaintiffs challenge this statement as not based on personal knowledge. (D. 28, p. 4) ("There is absolutely no proof" of a written agreement that "contained an arbitration provision"); (D. 28, p. 6) ("[T]he defendants [sic] have not produced a written agreement containing an arbitration provision" and "Murphy has no personal knowledge of what . . . happened when the account was opened[.]").  In the discussion section later, the court addresses to what extent the statement may be considered.

[5] The plaintiffs characterize the above statement as "pure speculation" (D. 28, p. 3) and lacking personal knowledge (D. 28, p. 6).  Here again, whether to consider the statement is addressed in the discussion section.

4) (D. 26-1, pp. 34-48).   Murphy avers that "[t]he arbitration provision" in this agreement "is similar to the arbitration provision that Halmark PSP would have executed" when it opened the account with Legg Mason.[6]  (D. 26-1, p. 2, ¶ 5).

The arbitration clause in the Morgan Stanley client agreement ("Morgan Stanley arbitration clause") reads as follows:

> You agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between you and Morgan Stanley and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by you with Morgan Stanley individually or jointly with others in any capacity; (ii) any transaction involving Morgan Stanley or any predecessor or successor firms by merger, acquisition or other business combination and you, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between you and us, any duty arising from the business of Morgan Stanley or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which Morgan Stanley is a member.

(D. 26-1, p. 43, ¶ 15).

### B.  **Allegations in the Amended Complaint**

The amended complaint alleges that, as of March 31, 2018, Mark Crean owned 60% of the Halmark PSP Account, and David M. Crean owned the remaining 40% of the account.  (D. 1-1, p. 231, ¶ 14).  The value of the account at that time was $110,017.  (D. 1-1, p.

---

[6] The plaintiffs implicitly challenge this statement (D. 26-1, p. 2, ¶ 5), which is analogous to the challenged statement in paragraph four (D. 26-1, p. 2, ¶ 4, sent. 2), because the statement (D. 26-1, p. 2, ¶ 5) is not based on personal knowledge.  (D. 28, pp. 3, 6).  Whether to consider this affidavit statement as part of the record is addressed in the discussion section.

231, ¶ 15).  In April, May, and June 2019, Mark Crean made several requests to Morgan Stanley to withdraw his portion of the Halmark PSP Account.  (D. 1-1, p. 232).  He made additional requests in 2020.  (D. 1-1, pp. 233, 428-29, 436-37).  Despite these requests, Morgan Stanley "continues to hold, withhold, and retain the funds" and assets in the account.  (D. 1-1, p. 234, ¶ 38).  As a result, on April 29, 2021, the plaintiffs filed this action in the Massachusetts Superior Court Department (Suffolk County).  (D. 1-1, p. 5).  As noted, the amended complaint sets out claims for breach of contract, conversion, fraud, breach of fiduciary duties, and violation of M.G.L. c. 93A, § 9.  (D. 1-1, pp. 235-239).

C.  **Procedural History**[7]

The plaintiffs served the complaint on the defendant on May 20, 2021, and served the amended complaint on June 14, 2021.  The defendant timely removed the action to the United States District Court for the District of Massachusetts four days later, on June 18, 2021.  On June 25, 2021, the defendant filed an answer to the amended complaint.  Notably, it sets out an affirmative defense that the claims are barred "by the terms and conditions and/or limitations of liability, including mandatory arbitration provisions . . ."[8]  (D. 6, p. 19).

---

[7] The procedural history is germane to the plaintiffs' waiver argument.

[8] The plaintiffs are thus mistaken when they assert, "Significantly, in Morgan Stanley's Answer to the Complaint dated June 25, 2021, no mention is made of an

In July 2021, the parties proposed scheduling deadlines, including automatic discovery by August 23, 2021, and fact discovery by February 16, 2022. (D. 9). In early August 2021, the court declined to adopt these deadlines. Rather, the court stayed all discovery in light of ongoing settlement discussions and instructed the parties to file a status report in one month. (D. 10). The parties submitted joint status reports on September 3 and 17, 2021. (D. 12, 14). In October 2021, the court referred the matter to the court's alternative dispute resolution (ADR) program and directed the parties to proceed with automatic discovery. The parties participated in a November 2021 ADR session during which the case partially settled. (D. 23).

In early December 2021, the parties submitted another joint status report. (D. 23). On December 14, 2021, the court extended the discovery deadline to June 30, 2022. The plaintiffs served the defendant with interrogatories, requests for production of documents, and requests for admissions. (D. 28, p. 5) (D. 28-1). The parties concur that the defendant did not respond to these discovery requests.[9] (D. 28, p. 5). The parties do not identify what, if any, discovery the defendant initiated. On June 30, 2022,

---

alleged arbitration agreement either throughout the Answer or as an Affirmative Defense." (D. 28, p. 2).

[9] Specifically, during oral argument the defendant's counsel agreed with the plaintiffs' representation (D. 28, p. 5) that the defendant did not respond to the discovery requests, including the interrogatories.

the defendant filed the present motion to compel arbitration.  (D. 25).  No party moved for summary judgment before (or after) the August 1, 2022 filing deadline.

On January 3, 2023, the court set a hearing for oral argument on the motion to compel and allowed the parties to file additional exhibits if they agreed.  Neither party supplemented the record at the January 18, 2023 hearing.

## III.  <u>DISCUSSION</u>

The defendant contends the arbitration clause in the Morgan Stanley client agreement is substantively the same as the arbitration clause in the Legg Mason client agreement.  (D. 26, pp. 2-3) (D. 26-1, p. 2, ¶ 4, sent. 2).  According to the defendant, the arbitration clause in the Legg Mason client agreement sets out a valid written arbitration agreement that the defendant is entitled to invoke.  The defendant also asserts the arbitration clause is binding on Halmark PSP and the claims fall within its scope.  (D. 26).  The plaintiffs maintain a signed written agreement to arbitrate containing an arbitration clause is lacking and, regardless, the defendant's delay in not filing the motion to compel until the day discovery closed necessitates denying the motion.  (D. 28).

A.  <u>Signed Written Agreement with Arbitration Clause</u>

1.  <u>Validity</u>

In order "[t]o compel arbitration, the defendants 'must demonstrate (1) that a valid agreement to arbitrate exists, (2) that they are entitled to invoke the arbitration clause, (3) that the other party is bound by that clause, and (4) that the claim asserted comes within the clause's scope.'" *Bossé v. N.Y Life Ins. Co.*, 992 F.3d 20, 27 (1st Cir. 2021) (brackets in original omitted) (quoting *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 6 (1st Cir. 2014)).  Whereas "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), the FAA's "liberal policy favoring arbitration 'is only triggered when the parties actually agreed to arbitrate.'" *Air-Con*, 21 F.4th at 173–174 (previously citing *Moses Cone*, 460 U.S. at 24) (citation omitted).

With respect to the first requirement, "the court determines" if "a valid arbitration agreement exists" prior to "referring a dispute to an arbitrator." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 530 (2019); *see* 9 U.S.C. § 4.  State law applies to the court's determination.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  More specifically, in "deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts . . . should

apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944 (citations omitted); *accord Bossé*, 992 F.3d at 27 n.6.   Furthermore, it is the party "seeking to compel arbitration" who "must demonstrate 'a valid agreement to arbitrate exists.'" *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011) (citation omitted); *accord Air-Con*, 21 F.4th at 176 (recognizing that moving party "had to affirmatively demonstrate the existence of a binding agreement to arbitrate").

### 2.   Applicable State Law

In determining which state law to apply, the Morgan Stanley client agreement instructs that New York law applies.   (D. 26-1, p. 34).   Several district courts in Massachusetts, however, have found that contractual choice-of-law clauses do not apply to a validity determination.   *See Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 294 n.4 (D. Mass. 2016) (quoting *Foodmark, Inc. v. Alasko Frozen Foods, Inc.*, Civil Action No. 12-10837-DPW, 2013 WL 1285539, at *8 (D. Mass. Mar. 26, 2013) ("It would be odd to apply a contractual choice-of-law clause when determining whether any part of the contract is valid in the first instance.")) (additional citation omitted); *accord Murray v. Grocery Delivery E-Services USA Inc.*, 460 F. Supp. 3d 93, 97 (D. Mass. 2020) (rejecting New York choice-of-law clause because "Court applies Massachusetts contract law to determine if the arbitration agreement is valid")

(citing *Bekele*, 199 F. Supp. 3d at 294).   Adhering to this precedent, "'[b]ecause the Agreement's choice-of-law provision does not apply to the validity of the contract's formation, Massachusetts choice-of-law rules will directly determine which state's law does apply.'" *Okereke v. Uber Techs., Inc.*, Civil Action No. 16-12487-PBS, 2017 WL 6336080, at *5 n.6 (D. Mass. June 13, 2017) (quoting *Bekele*, 199 F. Supp. 3d at 294 n.4), *report and recommendation adopted*, No. 16-12487-PBS (D. Mass. Aug. 7, 2017).

"Massachusetts courts generally apply the law of the state that has the most significant relationship to the litigation." *Id.*   Notwithstanding the paucity of the record, the parties agree the plaintiffs reside in Massachusetts.   (D. 1, pp. 3-4, ¶¶ 16-17) (D. 1-1, p. 229, ¶¶ 1-2).   Halmark PSP is also a Massachusetts corporation.   (D. 1-1, p. 26).   The citizenship of Legg Mason is not in the record.   The circumstances under which Halmark PSP executed a Legg Mason client agreement purportedly containing an arbitration clause are also unclear.   On balance, Massachusetts ostensibly has the most significant relationship to this litigation and its law therefore applies.

### 3.   Proof of a Signed Written Agreement for Arbitration

Per the foregoing, the plaintiffs' argument that no signed written agreement for arbitration exists raises a validity issue. Indeed, "the first step" in the arbitration analysis is to determine whether "a written agreement to arbitrate" exists.

*Bekele*, 199 F. Supp. 3d at 294 (citation omitted).  "[I]f the contract containing the arbitration agreement was never binding on the plaintiff[s], the arbitration clause cannot be enforced against [them]."  *Id.* (citation omitted).

The FAA undeniably requires a "written agreement for arbitration."  9 U.S.C. § 4; *see* 9 U.S.C. § 2.  As previously explained, the defendant bears the initial burden of production on this point.  See R*odríguez-Rivera v. Allscripts Healthcare Solutions, Inc.*, 43 F.4th 150, 168 (1st Cir. 2022) ("party seeking to compel arbitration . . . bears the burden of demonstrating that a valid agreement to arbitrate exists") (citing *Soto-Fonalledas*, 640 F.3d at 474); *Air-Con*, 21 F.4th at 177 (moving party has initial burden of production).  Here, the defendant asserts that, although it has been unable to locate it, there was a written agreement with an arbitration clause at the time Halmark PSP opened the Halmark PSP Account with Legg Mason.  (D. 26-1, p. 2, ¶ 4).

The defendant relies on Murphy's affidavit which, in turn, attaches the Morgan Stanley client agreement and the arbitration clause therein.  This secondary evidence is permissible to show the missing or lost Legg Mason client agreement "if [the] failure to produce the original is satisfactorily explained," *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 9 (1st Cir. 2001) (quoting Fed. R. Evid. 1004 advisory committee's note to 1972 proposed rules), and there is similarity between the sample and

the original agreements.  *See* R*odríguez-Rivera*, 43 F.4th at 170.
The loss of the "original, unless due to bad faith of the
proponent, is a satisfactory explanation."[10]  Fed. R. Evid. 1004
advisory committee's note to 1972 proposed rules; *accord Com. v.
Ocasio*, 434 Mass. 1, 6 (2001) (discussing *Fauci v. Mulready*, 337
Mass. 532, 540 (1958)).

The plaintiffs argue the affidavit is insufficient proof of
a written agreement because Murphy lacks personal knowledge of the
same, noting there is no indication he worked at Morgan Stanley in
February 2005.  Adhering to the summary judgment standard, Fed. R.
Civ. P. 56(c)(4) requires an affidavit based "on personal
knowledge."  Fed. R. Civ. P. 56(c)(4).  Moreover, "district courts
must apply Rule 56(c)(4) 'to each segment of an affidavit, not to
the affidavit as a whole,' and approach the declaration with 'a
scalpel, not a butcher's knife,' disregarding only those portions
that are inadmissible and crediting the remaining statements."
R*odríguez-Rivera*, 43 F.4th at 170 (finding abuse of district
court's discretion in striking entire affidavit proffered to
oppose motion to compel arbitration).

Here, construing the affidavit in favor of the plaintiffs as
the nonmoving parties, *Air-Con*, 21 F.4th at 175, it is apparent
that Murphy, a Morgan Stanley financial advisor, did not work for

---

[10] The record does not indicate bad faith.

Legg Mason at the time Halmark PSP purportedly signed (or otherwise agreed to) a written Legg Mason client agreement in February 2005. Indeed, the affidavit does not indicate Murphy ever worked for Legg Mason, and Murphy forthrightly acknowledges that the Morgan Stanley materials he reviewed did not contain a copy of the controlling agreement Halmark PSP purportedly signed when it opened the account with Legg Mason in February 2005. In fact, Morgan Stanley did not acquire the account until seven years later, in January 2012. (D. 26-1, p. 2, ¶ 3). In all, the affidavit fails to indicate any work history with Legg Mason or facts supporting Murphy's personal knowledge of the Legg Mason client agreement with Halmark PSP. Given this context, Murphy's affidavit statement declaring the affidavit as "based on personal knowledge" (D. 26-1, p. 2, ¶ 1) is not convincing regarding his personal knowledge of the events at Legg Mason regarding the purported 2005 Legg Mason client agreement with Halmark PSP and its inclusion of a mandatory arbitration clause.

The plaintiffs specifically assert the following affidavit statements are not made on personal knowledge: "Halmark PSP would have been required to sign a client agreement containing a mandatory arbitration clause" when it opened the account with Legg Mason (D. 26-1, p. 2, ¶ 2); the Legg Mason client "account agreement would have contained an arbitration provision similar to those used by Morgan Stanley at account opening" (D. 26-1, p. 2,

¶ 4, sent. 2); and "[t]he arbitration provision" in the Morgan Stanley client agreement "is similar to the arbitration provision that Halmark PSP would have executed" when it opened the account with Legg Mason (D. 26-1, p. 2, ¶ 5).  (D. 28, pp. 3-4, 6).  Taking a scalpel approach, *see Rodriguez-Rivera*, 43 F.4th at 170, the court agrees that Murphy lacks personal knowledge for each of these three statements.

In particular, there is no indication Murphy worked for Legg Mason.  He is unable to locate the original Legg Mason client agreement with the purported arbitration clause.  The unsigned Morgan Stanley client agreement is part of the Morgan Stanley Retirement Plan Manager Product Establishment Kit which reflects dates of April 2021 or May 2020.[11]  (D. 26-1, pp. 4-48).  Under the circumstances, the sample Morgan Stanley client agreement dated 15 years after the purported Legg Mason client agreement by a different entity (Morgan Stanley) does not give rise to a reasonable inference that Halmark PSP was bound by a *similar* clause when it opened the account with Legg Mason in 2005 or, as the plaintiffs suggest, in 1984.  *See Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 694 & n.3 (S.D.N.Y. 2015) ("sample contracts between non-parties and AT & T Wireless" as well as declaration by AT & T employee in Missouri lacked information regarding employee's

---

[11] The dates appear in the upper or lower right-hand corner of the document. (D. 26-1, pp. 4-48).

management of accounts "opened in New York" and was therefore not probative to establish "*these* Plaintiffs entered into binding agreements to arbitrate with AT & T"); *accord Rodríguez-Rivera*, 43 F.4th at 170 ("Allscripts submitted no evidence that the EULA that Rodríguez may have signed was at all similar to the EULA it presented to the district court.").

As such, Murphy's lack of personal knowledge about the Legg Mason/Halmark PSP client agreement, as well as an absence of records kept in the ordinary course of business probative of *that* agreement and its inclusion of a written arbitration agreement, make it inappropriate to consider these three affidavit statements as part of the record. *See* Fed. R. Civ. P. 54(c)(4). Further, there is a lack of evidence that the arbitration clause in the Legg Mason client agreement is *similar* to the arbitration clause in the Morgan Stanley client agreement. Further still, the record does not provide evidence of mutual assent, including that Halmark PSP accepted an offer to enter into a Legg Mason client agreement with an arbitration clause in February 2005.

Accordingly, the defendant does not satisfy its initial burden of production as to a valid written agreement to arbitrate between Legg Mason and Halmark PSP, and there is thus no basis to conclude that the relationship between Legg Mason and Halmark PSP is governed by a written agreement to arbitrate. *See generally Air-Con*, 21 F.4th at 171, 177 (reversing allowance of motion to

compel arbitration and remanding for further proceedings after finding "no basis for concluding that the relationship between Air-Con and Daikin Applied was controlled by the written agreement between Air-Con and Daikin Industries," which contained arbitration clause). The motion to compel therefore fails.[12]

## IV. Waiver

Although the court could end its analysis here for the reasons noted above, it addresses the plaintiffs' remaining arguments in the interests of thoroughness. The plaintiffs argue that the motion to compel should be denied as untimely where the defendant waited until June 30, 2022, the day discovery ended, to assert a right to arbitrate and file the motion to compel. (D. 28, pp. 4-5).

---

[12] Given the court's conclusion, it is not necessary to address the plaintiffs' related contention that the motion to compel fails in the absence of evidence of a *signed* written agreement. The court notes, however, that while an arbitration agreement must be written to be binding under the FAA, it does not necessarily need to be signed. *Lakeshore Engineering Services, Inc. v. Target Const., Inc.*, 2 F. Supp. 3d 1038, 1048 n.7 (E.D. Mich. 2014) (citing 9 U.S.C. § 2); *accord Johnson v. Carter*, 2012 WL 666089, at *5 (M.D. Ala. 2012) (missing signature does not prevent "enforceable written arbitration agreement"). Similarly, an absence of a party's signature does not always preclude the existence of a contract under Massachusetts law. *See Haufler v. Zotos*, 446 Mass. 489, 498-99 (2006) ("written contract, signed by only one party, may be binding and enforceable even without the other party's signature if the other party manifests acceptance") (citation omitted); *Gallant v. Boston Executive Search Associates, Inc.*, Civil Action No. 13-12081-FDS, 2015 WL 3654339, at *8 (D. Mass. June 12, 2015) ("Mutuality of assent may be proved in a variety of ways.") (applying Massachusetts law); *DB Riley, Inc. v. AB Engineering Corp.*, 977 F. Supp. 84, 89 (D. Mass. 1997) ("statement at the top right corner of the purchase order does not require [contracting party's] signature to validate the contract") (applying Massachusetts law).

In assessing whether a party has waived its right to arbitrate through litigation conduct, the First Circuit examines a list of non-exclusive factors:

> (1) whether the parties participated in a lawsuit or took other action inconsistent with arbitration; (2) whether the "litigation machinery has been substantially invoked and the parties [are] well into preparation of a lawsuit by the time an intention to arbitrate [is] communicated"; (3) "whether there has been a long delay" and trial is near at hand; (4) whether the party seeking to compel arbitration has "invoked the jurisdiction of the court by filing a counterclaim"; and (5) whether discovery not available in arbitration has occurred . . .

*FPE Foundation v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015) (quoting *Restoration Pres. Masonry v. Grove Eur., Ltd.*, 352 F.3d 54, 60-61 (1st Cir. 2003)).  An additional, sixth factor set out in *FPE*, namely, "whether the party asserting waiver has suffered prejudice," *id.*, is no longer a factor.  *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1712-13 (2022) ("[T]he Eighth Circuit was wrong to condition waiver of the right to arbitrate on a showing of prejudice.").  Indeed, the Court in *Morgan* abrogated a decision in this circuit, *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945 (1st Cir. 2014), *abrogated by Morgan*, 142 S. Ct. 1708 (2022), which sets out the same factors used in *FPE*, including the sixth prejudice factor.  *Joca-Roca*, 352 F.3d at 948.

Stripped of the prejudice factor, the First Circuit analysis focuses on the existence of undue delay in asserting arbitral rights based on the remaining five factors.  *See Joca-Roca*, 772

F.3d at 948 (prefacing six factors as twofold inquiry of "undue delay in" asserting "arbitral rights" and "unfair prejudice" to other party, with only sixth factor implicating "prejudice[]" to "party opposing arbitration"). Examining the five remaining factors without considering the FAA's policy favoring arbitration, *see Morgan*, 142 S. Ct. at 1413-14 ("FAA's 'policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring rules," such as "the one we address here," i.e., waiver), the defendant's actions fall short of being inconsistent with seeking arbitration or substantially invoking the litigation machinery. *See Creative Solutions Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 33 (1st Cir. 2001) (examining defendant's conduct to support findings that defendant did not substantially invoke litigation machinery and did not take inconsistent steps).

By way of explanation, the defendant filed an answer asserting a defense that the claims are barred by a prior agreement involving, inter alia, a "mandatory arbitration provision[]." (D. 6, p. 19); *see Hilti, Inc. v. Oldach*, 392 F.2d 368, 371 (1st Cir. 1968) (reversing lower court's waiver finding and noting "defendant's answer, in its special defense, served notice on plaintiff of the arbitration defense"); *United States v. Williams Building Co., Inc.*, 137 F. Supp. 3d 6, 11 (D. Mass. 2015) (finding no waiver and noting defendant's answer "asserted arbitration as

an affirmative defense"). The defendant did not respond to the interrogatories, documents requests, and requests for admission.[13] More, beyond the defendant likely serving initial disclosures (D. 9, ¶ 1) after the court's October 2021 order allowing such disclosures to proceed (D. 16), there is little, if any, indication that the defendant initiated any discovery requests. *See Trout v. Organización Mundial de Boxeo, Inc.*, 965 F.3d 71, 77 (1st Cir. 2020) (noting defendant participated in discovery "only occasionally" and "did so only after Trout himself had initiated discovery"); *Creative Solutions*, 252 F.3d at 33 (citing *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661–62 (5th Cir. 1995), to support defendant did not take steps inconsistent with arbitration even though it filed, inter alia, answer with "compulsory counterclaim, and exchang[ed] Rule 26 discovery").

To be sure, the defendant engaged in settlement discussions prior to moving for arbitration. *See Morgan*, 142 S.Ct. at 1711 (dicta noting that "filing motions to dismiss, answering complaints, and discussing settlement" before requesting arbitration raises question of whether "switch to arbitration comes too late"). Such limited participation after raising the arbitration-based affirmative defense is not inconsistent with seeking arbitration or *substantially* invoking the litigation

---

[13] See footnote nine.

machinery.  *Cf. Joca-Roca*, 772 F.3d at 947 (finding waiver in context of pretrial proceedings involving 16 depositions, interrogatories, "thousands of pages of documents," and four telephone conferences with court to resolve disputes); *see Toddle Inn Franchising, LLC v. KPJ Associates, LLC*, 8 F.4th 56, 64 (1st Cir. 2021) (contrasting discovery in *Joca-Roca*, 772 F. 3d at 947, to limited discovery by KPG Associates, Inc. and finding no waiver); *see also Odunukwe v. Trans Union, LLC*, Civil Action No. 21-cv-10828-ADB, 2021 WL 4554089, at *4 (D. Mass. Oct. 5, 2021) (stating that party seeking arbitration "raised the issue of arbitration in its answer" and "took no action inconsistent with arbitration").

With respect to the length of delay, the plaintiffs note that the defendant waited 13 months after being served with the original complaint to file the motion to compel arbitration.  However, where the defendant timely filed an answer asserting the affirmative defense of arbitration and thereafter engaged in relatively minimal litigation, the court cannot find that the defendant engaged in *undue* delay.  *See Hall v. Internet Cap. Grp., Inc.*, 338 F. Supp. 2d 145, 153 (D. Me 2004) (evaluating length of delay "in the context of litigation activities engaged in during that time").

Moreover, there is no trial date yet in this case, let alone a "trial near at hand."  *FPE*, 801 F.3d at 29 (noting "'whether

there has been a long delay' and trial is near at hand" as factor). The defendant also did not file any counterclaims.

The court finds from the foregoing that the defendant did not waive its right to arbitrate the claims in the amended complaint.

As a final argument, the plaintiffs contend that the defendant's failure to respond to a particular request for admission and a document request warrants denial of the motion to compel. Specifically, the request for admission asks the defendant to admit "[t]here is no written agreement between Morgan Stanley/Smith Barney LLC that was executed by anyone on behalf of the [Halmark PSP] when the [Halmark PSP] was originally established with *Morgan Stanley/Smith Barney LLC*." (D. 28, p. 5) (emphasis added). The answer to this request would not determine much, however. The material issue is not whether there was a written agreement between Morgan Stanley and Halmark PSP when Morgan Stanley acquired the Halmark PSP Account in January 2012, but rather whether there was a 2005 written agreement containing an arbitration clause between Legg Mason and Halmark PSP, which purportedly "continued to bind" Halmark PSP "upon Morgan Stanley's acquisition" of the Halmark PSP Account. (D. 26, pp. 2, 5) (D. 26-1, p. 2, ¶ 2).[14]  Hence, the defendant's failure to respond and

---

[14] Paragraph two of Murphy's affidavit is cited to show the arbitration agreement the defendant seeks to enforce as opposed to, for example, the truth of the matter asserted that "Halmark PSP would have been required to sign a client agreement containing a mandatory arbitration clause." (D. 26-1, p. 2, ¶ 2).

thereby admit the admission request, *see* Fed. R. Civ. P. 36(a)(3), does not warrant denying the motion to compel.

The document request suffers from the same deficiency.  It seeks "[c]opies of any and all agreements between [Morgan Stanley] and the original creators of the Halmark PSP."  (D. 28, p. 6). Moreover, Morgan Stanley's inability "to locate a signed copy of the agreement controlling the Halmark PSP Account" (D. 26-1, p. 2, ¶ 4, sent. 1) provides a viable explanation to avoid producing the requested documents.  *See generally Guillory v. Skelly*, 12-CV-00847, 2014 WL 4542468, at *9 (W.D.N.Y. Sept. 11, 2014) (statement that requested document does not exist is sufficient to avoid producing the document) (collecting cases).  As such, the failure to produce responsive documents to the document request does not merit denying the motion to compel arbitration.

In sum, the defendant did not waive its right to arbitrate the claims on the present record.  Nevertheless, the motion to compel arbitration fails because the defendant did not satisfy its initial burden of proving the existence of a valid written agreement to arbitrate the dispute between Legg Mason and Halmark PSP.[15]  The plaintiffs' burden to offer evidence to support its own

---

[15] The defendant's failure to satisfy its initial burden of production regarding a valid written arbitration agreement obviates the need to address the defendant's remaining arbitrability arguments.

case therefore never arose.  *See Air-Con*, 21 F.4th at 177 (citation omitted).

As a final matter, the parties, who commendably have worked civilly and professionally throughout this case, concurred at the hearing on the defendant's motion that the defendant should be permitted to respond to the plaintiffs' outstanding discovery requests if the court were to deny the motion to compel arbitration.  In that vein, the parties should *promptly* file a joint motion to amend the scheduling order with a proposed schedule regarding the remainder of discovery.

## V.   <u>CONCLUSION</u>

In accordance with the foregoing discussion, the motion to compel arbitration and stay these proceedings (D. 25) is **<u>DENIED</u>**.


<u>/s/ Donald L. Cabell</u>
DONALD L. CABELL, U.S.M.J.

DATED:  January 23, 2023